JACOB KATCHER, RESPONDENT, v. AMERICAN EXPRESS COMPANY, APPELLANT.

Argued November 6, 1918—Decided December 18, 1918.

The plaintiff paid to the defendant $194.50 for which the latter agreed to forward for the plaintiff $194.50, or its equivalent, 1,000 rubles, to plaintiff's wife in Russia. The agreement was manifested by a written receipt in which the defendant acknowledged that it had received from the plaintiff $194, equivalent to 1,000 rubles, for remittance to plaintiff's wife in Russia. Delivery could not be made through the Russian postal service, due to conditions created by the war, and four months after a failure to deliver, the defendant offered to refund to the plaintiff $127.50 which it claimed was the then present value of 1,000 rubles in American money. This the plaintiff refused and brought suit to recover the $194.50 deposited with the defendant for remittance. On proof of these facts defendant moved for a nonsuit on the ground that its liability ceased when it cabled to its agent in Russia a direction to pay to plaintiff's payee the 1,000 rubles. *Held,* that the contract to forward the money or its equivalent was not performed until delivery, even though the failure was not the fault of the defendant. and that plaintiff was entitled to recover at least the value of the rubles, if not the money paid as a consideration for the contract, and as something was due plaintiff, the refusal to nonsuit was not error.

---

On appeal from the First District Court of Newark.

Before Justices BERGEN, KALISCH and BLACK.

For the respondent, *Philip J. Schotland.*

For the appellant, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

BERGEN, J. The defendant was engaged in the business of transmitting money from one person to another, and in furtherance of that business it had a duly-accredited agent in the city of Newark and another in the city of Petrograd, Russia, the latter being a banking-house, at which the defendant kept a deposit, out of which the agent paid such sums as the defendant might request to any person named.

While it is not perhaps important what method the defendant pursued in transmitting money from this country to a person in Russia, it was proven that in most cases the defendant would cable to the Russian bank the amount to be paid in Russian currency and the name of the payee, on receipt of which the Russian bank would procure a post-office order and mail it to the address of the payee, and if for any reason the bank was unable to do this, the amount directed to be paid remained to the credit of the defendant in the Russian bank, and the defendant was notified that the order was not "effected."

The facts in this case are, that the plaintiff called on the defendant's agent in the city of Newark, in this state, and said, as the agent testified, "I want to send 1,000 rubles," giving the agent the name of the payee and her address with request that it be cabled; that the plaintiff asked what it would cost, and the agent informed him that the entire cost, including the commission of the defendant and the charge for the agent's service, would be $194.50, which sum the plaintiff paid to the agent, for which he was given a receipt dated September 8th, 1917, which acknowledged that the defendant had received from the plaintiff "one hundred and ninety-four dollars, not exceeding $50, equivalent of one thousand (1,000) rubles * * * for remittance to Tese Kacjur, at Bereznier, Luckiy, Wolynck," and following this the amount in figures, $194.50, but while the written part of the receipt acknowledges only the receipt of $194, it is not denied that the amount actually paid was $194.50.

The receipt was issued, subject to certain express conditions, the only one material to the present case being "the sum of

money if covered by this receipt, if duly issued as aforesaid, will be forwarded to the payee named herein, subject to the rules and regulations of the various post offices used in making the remittance."

There is another condition which is: "This receipt must not be issued or accepted for more than the sum of $50, or its equivalent, and is not valid for more than said sum or its equivalent."

The trial court refused to give any effect to this receipt, because it was issued for more than $50, but, manifestly, that is not sound, for the defendant by its subsequent action ratified it as a receipt for $194.50. The inference to be drawn from the testimony and the exhibits are, that the plaintiff applied to the defendant to have it forward to the payee named, residing in Russia, $194.50, which he was told was the equivalent of 1,000 rubles; that the defendant accepted the money, and, by the condition above set out, agreed to forward it to the payee named therein; that for some reason, for which the defendant was not responsible, the money was not paid to the payee out of defendant's money on deposit in the Russian bank; that the defendant was notified by its Russian agent that the payment could not be made to the payee because of conditions existing in Russia due to the war, and therefore the defendant was not able to do what it had agreed to do and for which it had accepted from the plaintiff $194.50; that when the defendant learned that its agreement could not be carried out, it offered to refund to the plaintiff only $127.50, for the reason that at the time the refund was offered the value of rubles had depreciated in the United States to the extent that 1,000 rubles could be purchased here for $127.50. This offer the plaintiff refused and brought his suit to recover the amount of the money paid to the defendant which, or its equivalent, was to be forwarded to the payee named, and for that sum he recovered this judgment from which the defendant has appealed.

The defendant moved for a nonsuit, which was refused, and in support of such motion argues that the remittance was completed when defendant cabled instructions to its agent in

Russia whether the fund came to the payee or not, upon the theory that plaintiff purchased only a credit for the payee to the extent of 1,000 rubles, and if for any reason defendant could not make delivery to the payee, the plaintiff was not entitled to have refunded the cost of the credit but only its present value.

We do not think this is a proper construction of the contract, which was to remit to the payee $194.50, or its equivalent of 1,000 rubles. The contract manifested by the receipt is an agreement to remit $194.50, or its equivalent of 1,000 rubles, which requires a tender to the payee of at least 1,000 rubles in Russia and would not have been complied with by tendering anything else, and that not having been done because of impossibility of performance because of the war, the parties are in this position; the defendant accepted $194.50 from the plaintiff upon an agreement to perform a certain contract which, through no fault of the defendant, the latter could not perform, and therefore he was bound to refund the consideration paid by the plaintiff. The authority of the Newark agent to make a refund was limited to the sum of $127.50, which is to be found in a letter dated March 4th, 1918, written by the defendant to their Newark agent, which recited that their agent in Russia had been unable to deliver the foreign remittance in question and directing him as follows: "You may therefore refund the sum of $127.50 to remitter, taking receipt for same on form below and return to us for check." The agent, therefore, had no authority to tender the plaintiff 1,000 rubles, even if plaintiff was bound to accept it, his authority being limited to refund $127.50.

There is no proof in the case showing the value of the rubles in Russia at the time the Russian agent attempted to make delivery and failed.

The defendant in support of its appeal also argues that the trial court was in error in denying the motion for nonsuit, because, as the agreement was to remit through the Russian post office and in accordance with its rules and regulations, "all that the defendant agreed to have its Russian correspondent do was to mail the rubles through the post office in

the manner provided by that post office for remitting money; it did not agree to become responsible for the defaults of the post office; all it could do was to put the money in the way of being delivered by that governmental agency in the due course of business." This is rested upon the condition attached to the receipt that the money will be forwarded to the payee, "subject to the rules and regulations of the various post offices used in making the remittance."

This argument is specious, for the condition manifestly refers to the efficiency of the post office which the defendant proposed to use in making the remittance and the defendant would not be relieved from all responsibility simply because conditions existed in Russia which prevented the efficient use of one of its selected agencies.

It should be remembered that the defendant did not buy rubles for the plaintiff, for it appears in the case that they had at least 1,000 rubles deposited in the Russian bank, and it lost nothing through its inability to tender delivery of the 1,000 rubles.

The situation seems to be this: The defendant took from the plaintiff $194.50, for which it agreed to deliver to a person named as payee $194.50, or its equivalent of 1,000 rubles, which it was not able to comply with, and its agent in Russia knew on the 13th of November, 1917, that no delivery could be made, and yet by the tender to refund, the defendant charges the plaintiff with all depreciation which occurred between that date and March 4th, 1918, without any proof that there had been any depreciation on the 13th of November, 1917. We are of opinion that the nonsuit was properly refused.

The next point argued is, that the trial court refused permission to take the testimony of a material witness in Petrograd by a commission, and the defendant also offered to prove the facts inquired about in the interrogatories. These interrogatories all relate, except as to those which are admitted, to what steps were taken by the Russian bank to make delivery.

According to the view which we take of this case it is quite immaterial what efforts were made to make delivery, and we

have assumed that all proper steps were taken to make delivery, and that the failure to do so was not the fault of the defendant or its representative.

The third point is, that the court erred in declining to find the facts in accordance with certain requests. These requests are all based on the proofs in the case, and we have assumed them to be found as requested in the consideration of the questions raised.

The fourth point is, that the court erred in refusing to find the law in accordance with the defendant's requests. The first is, that the sale to the plaintiff of a credit for 1,000 rubles was a completed transaction on the date of the receipt, and that the defendant became the owner of the money paid for such credit. We think the ruling of the court was correct.

The second request is, that the agreement to remit does not obligate the defendant to deliver the rubles, and that its only duty was to remit in accordance with the usual practice covering remittance of money by cable. This, we think, was properly refused.

The third and fourth requests are in substance, that purchasing a money order at a Russian post office, and enclosing the same in an envelope addressed to the payee, constituted a remittance in the manner contemplated by the contract, and that if the money order had been sent to the payee addressed, and returned by the post office to the Russian bank, it became the duty of the defendant to hold to the plaintiff's account the credit for 1,000 rubles. This we do not agree to and its refusal was correct, nor, in this case, did the defendant's agent hold anything to plaintiff's credit.

The fifth request is, that the purchase of a credit available in Russia was complete when made, and if a depreciation of rubles between the time of purchase and the return of the same to the defendant's correspondent as undeliverable, the credit became of less value when measured in terms of American money, the loss falls upon the plaintiff. This we do not consider to be the rule of law to be applied to the facts in this case, and was therefore properly refused.

The judgment will be affirmed, with costs.